Darlene MONTANO,

v.

AMSTAR CORPORATION.

Civ. A. No. 79–2694.

United States District Court,
E. D. Pennsylvania.

Nov. 12, 1980.

Terry L. Fromson, Philadelphia, Pa., for plaintiff.

Mari M. Gursky, Philadelphia, Pa., for defendant.

## MEMORANDUM

GILES, District Judge.

On July 31, 1979, plaintiff, a black woman, filed a timely *pro se* complaint alleging that she was the victim of race and sex discrimination in her employment in violation of law.[1] Specifically, she claimed a discriminatory change in work hours which resulted in constructive discharge. Plaintiff contends that due to parental responsibilities she had no alternative but resigna-

---

1. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; § 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1981. Plaintiff initially invoked the jurisdiction of the court by filing a petition for leave to proceed *in forma pauperis.* This petition was filed within ninety (90) days of receipt of the Right to Sue Letter from the Equal Employment Opportunity Commission ("EEOC").

tion. She alleges that accommodations were made for the schedules of her white co–workers but not for her and that white male co–workers were transferred to positions she could and should have had.

Prior to the first pretrial conference held on February 14, 1980, plaintiff obtained legal counsel. At the conference counsel advised defendant of plaintiff's intention to file a motion to amend the complaint to reflect fully what was regarded as the subject of the EEOC charge or arising from the EEOC investigation; namely, sex and race discrimination in pay, transfer and promotion, as well as sexual harassment by her immediate supervisor. The motion to amend was filed on April 14, 1980 following plaintiff's discovery of the EEOC's investigation files. Defendant, Amstar Corporation ("Amstar") objects to the proposed amendments on the grounds that it would be unduly prejudiced and that they raise legal issues not raised through the EEOC charge or its investigation. For the reasons which appear below, the amendment will be allowed in the form proposed, except that the proposed amendment as to sexual harassment will be denied.

Plaintiff alleges that on Friday, May 19, 1978, her immediate supervisor informed her that beginning Monday, May 22, 1978, her regular work hours would be changed. She would work from 7:00 a.m. to 3:00 p.m. daily rather than from 8:30 a.m. to 4:30 p.m. Plaintiff stated that over the weekend she tried but was unable to alter her childcare arrangements. When next at work she alleges that she complained to her immediate supervisor who told her that he did not care whether she could obtain a babysitter and that she could either work the scheduled hours, resign, or be fired. Plaintiff claims her supervisor did not give her a fourth option of taking a leave of absence. She resigned on Monday, May 22, 1980 when unable to make childcare arrangements.

Plaintiff claims that defendant assigned two less senior white male co–workers to work on a rotational basis to positions having compatible hours, which she should have

had by way of transfer or promotion. Plaintiff claims that defendant discriminated against her by refusing to be flexible in arranging her work hours while agreeing to be flexible in arranging the hours of her white co-workers.

Plaintiff worked in the Customer Services Department. The EEOC investigators obtained statistical data regarding wages, length of service, and the race and sex composition of the group of Customer Services employees. Consequently, plaintiff's proposed amendments as to pay, transfer and promotion are well taken.

However, plaintiff also seeks to amend by adding a claim of sexual harassment, that her supervisor pinched her buttocks on several occasions. This was neither a subject of the EEOC charge nor its investigation either by statement or inference.

Courts have limited the breadth of Title VII actions to the scope of the EEOC investigation which could reasonably be expected to grow out of the administrative charge. *Hicks v. A. B. T. Assoc., Inc.*, 572 F.2d 960, 966 (3d Cir. 1978); *Ostapowicz v. Johnson*, 541 F.2d 394, 399 (3d Cir. 1976). This is deemed necessary to effectuate the clear statutory purpose of administrative resolution and conciliation of claims of employment discrimination.

While the court is satisfied that the EEOC investigation did, or could reasonably have been expected to, explore for purposes of race and sex comparison the subjects of pay, promotion, work hours and job assignments it is equally confident that the alleged pinching of the charging party's buttocks would not have come to the EEOC's attention except by specific complaint.

Plaintiff made no attempt to make such a claim at any time during the EEOC process. Nor has she made any showing or proffer that the EEOC investigation was unreasonably narrow, that it refused to allow plaintiff to amend her charge to add this element or that it acted improperly in some other way. Cf. *Hicks v. A. B. T. Associates, Inc., supra,* 572 F.2d at 964–967. Therefore, the amendment under Title VII must be denied.

Section 1981 is of no aid to plaintiff's claim of sexual harassment since sex discrimination is not cognizable thereunder. *Runyon v. McCrary,* 427 U.S. 160, 167, 96 S.Ct. 2586, 2592, 49 L.Ed.2d 415 (1976); *De-Graffenreid v. General Motors Assembly Division,* 558 F.2d 480, 486 n.2 (8th Cir. 1977); *Ludwig v. Quebecor Dailies, Inc.,* 475 F.Supp. 57, 58 (E.D.Pa.1979); *Beamon v. W. B. Saunders Co.,* 413 F.Supp. 1167, 1173 (E.D.Pa.1976).

Defendant next asserts that the proffered amendments asserted under the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* (Supp.1980) ("PHRA") are new, barred by laches, and would, if incorporated in the complaint, prejudice defendant. Sections 953 and 955(a) of the PHRA prohibit discrimination in employment based on race or sex where an individual is otherwise qualified for the job. Under the doctrine of pendent jurisdiction, plaintiff's state claims are properly before this court in that their factual bases, as alleged, appear identical to those underlying the federal claims. As such, the federal and state claims may be considered one constitutional case. In *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Court stated:

> Pendent jurisdiction, in the sense of judicial *power,* exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority . . .' U.S.Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. *Levering & Garrigues Co. v. Morrin,* 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole.

The court is not required to exercise pendent jurisdiction merely because such jurisdiction exists. *Id.* at 726, 86 S.Ct. at 1139. *Hagans v. Lavine,* 415 U.S. 528, 545–550, 94 S.Ct. 1372, 1383–85, 39 L.Ed.2d 577 (1974); *Local No. 1 (ACA) v. International Brotherhood of Teamsters,* 614 F.2d 846, 850–851 (3d Cir. 1980); *Lentino v. Fringe Employee Plans, Inc.,* 611 F.2d 474, 478 (3d Cir. 1979). In deciding whether to exercise its discretion and assume pendent jurisdiction, the court notes that defendant, despite its protestations, has not shown how it would be prejudiced by the exercise of jurisdiction. The same alleged facts generate plaintiff's cause of action under Title VII; § 1981; and the PHRA. Indeed, plaintiff's claims were first investigated under state law by the Philadelphia Human Relations Commission and then referred to the EEOC. The state claims as proposed will not alter materially the factual and legal basis of plaintiff's action so as to unduly prejudice defendant. Moreover, the public interest in judicial economy, federal-state comity, and the litigants' own interest in convenience and fairness compel the exercise of pendent jurisdiction.